**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 21-511 |
| ISAIAH KAHLIL WISE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

The one-count Indictment in this case charges Defendant Isaiah Kahlil Wise with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Docket No. 15).  Presently before the Court is Defendant's Motion to Dismiss Indictment, wherein he argues that dismissal is warranted because § 922(g)(1) "violates [his] Second Amendment right to keep and bear arms" under the framework announced in recent case law from the United States Supreme Court and the United States Court of Appeals for the Third Circuit.  (Docket No. 5-12).  The Government opposes Defendant's Motion.  (Docket No. 67 at 2-14).  After careful consideration of the parties' respective positions, the Court concludes that § 922(g)(1) is constitutional as applied to Defendant, thus his Motion will be denied.[1]

## II.    BACKGROUND

On December 6, 2021, Defendant was charged in a criminal complaint with violating 18 U.S.C. § 922(g)(1).  (Docket No. 3).  Defendant made an initial appearance on that same date, and a preliminary hearing and a detention hearing were held on December 7, 2021, at which time he

---

1    Given that the parties have thoroughly briefed the issues raised by Defendant's Motion, the Court finds that a hearing and/or oral argument on the Motion is unnecessary.  *See* Fed. R. Crim. P. 12(c)(1) (providing that the court "may" schedule a motion hearing).

was released on bond with conditions.  (Docket Nos. 5, 9, 12, 13).

On December 28, 2021, Defendant was charged in a single count Indictment with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  (Docket No. 15).  Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition."  18 U.S.C. § 922(g)(1).  Following arraignment on the § 922(g)(1) charge, Defendant moved for, and was granted, numerous extensions of time to file pretrial motions.

Defendant now moves to dismiss the Indictment,[2] challenging the constitutionality of § 922(g)(1) following the Supreme Court's decision in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S. Ct. 2111 (2022) and the Third Circuit Court of Appeals' decision in *Range v. Attorney Gen. of U.S.*, 69 F.4th 96 (3d Cir. 2023).  (*See generally* Docket No. 59).  In light of these decisions, Defendant contends the Government will be unable to show that § 922(g)(1), as applied to him, is part of the historical tradition that limits the right to keep and bear arms.  (*Id.* at 5-12).

The Government advocates that the Court should reject Defendant's as-applied constitutional challenge to § 922(g)(1).  (*See generally* Docket No. 67 at 2-14).  According to the Government, Defendant's Motion should be denied because he does not contend that he possessed the firearm in question for self-defense, which is the only Second Amendment-protected purpose that the Supreme Court has recognized.  (*Id.* at 4).  Even if Defendant could overcome that deficiency, the Government maintains that he cannot overcome the facts that he was on state probation and had prior convictions for drug trafficking and other dangerous crimes, thus §

---

2        Defendant also filed a Motion to Preserve Law Enforcement's Rough Notes and a Motion to Provide Notice of Evidence that the Government Intends to Use Under Federal Rules of Evidence 404(b) and 609, (Docket Nos. 60, 61), which the Court ruled on in an Order dated September 15, 2023.  (Docket No. 68).

922(g)(1) is constitutional as applied to a person in Defendant's circumstances under the historical analysis set forth in *Range*. (*Id.* at 7-14). Given that Defendant did not file a Reply by the established deadline of August 24, 2023, (*see* Docket No. 64), the Court then took the matter under advisement, and the Motion is now ripe for disposition.

## III.   <u>LEGAL STANDARD</u>

Defendant moves to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). (Docket No. 59 at 1). According to that rule, an alleged defect in the indictment "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B); *see United States v. Covington*, 395 U.S. 57, 60 (1969) (observing that Rule 12 permits pretrial resolution of a motion to dismiss indictment when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."). "An indictment is defective if it alleges [a] violation of an unconstitutional statute." *United States v. Ho Ka Yung*, Crim. No. 17–14–LPS, 2018 WL 619585, at *1 (D. Del. Jan. 30, 2018) (quoting *United States v. Dean*, 670 F. Supp. 2d 457, 458 (E.D. Va. 2009) and citing *United States v. Boffa*, 513 F. Supp. 444, 459–64 (D. Del. 1980) (resolving motion to dismiss indictment where defendant alleged statute was unconstitutionally vague, overbroad, and unconstitutional as applied)). In this instance, Defendant argues that the Indictment should be dismissed because the statute it alleges he violated, 18 U.S.C. § 922(g)(1), is unconstitutional as applied to him. *See United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (In contrast to a facial attack,[3] an as-applied challenge "does not

---

[3]      "A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Marcavage*, 609 F.3d at 273 (citation omitted). Defendant's Motion does not assert a facial attack on § 922(g)(1). (*See* Docket No. 59 at 11) (contending that "[t]he Government will be unable to show that § 922(g)(1) as applied to [Defendant] is part of the historical tradition that limits the right to keep and bear arms").

contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.") (citation omitted).

Importantly, in analyzing a Rule 12 motion to dismiss, a district court's review is confined to the facts alleged in the indictment, *see United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011), and the court "must accept as true the factual allegations set forth [therein]." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (abrogated on other grounds by *Rehaif v. United States*, 139 S. Ct. 2191 (2019)). The scope of review remains the same where, as here, a defendant lodges an as-applied challenge to the statute that he is charged with violating.[4] *See id.* at 601 (in assessing on appeal a defendant's Second Amendment challenge to a charge of aiding and abetting possession of a firearm by a convicted felon, the Third Circuit emphasized that it was "limited to determining whether, based on the allegations in the Indictment—and only the allegations in the Indictment—[defendant's] Second Amendment rights have been violated"). Against this legal standard, the Court considers Defendant's Motion.

## IV.   DISCUSSION

Defendant argues that the Indictment should be dismissed because § 922(g)(1) is unconstitutional as applied to him following *Bruen* and *Range*. (*See* Docket No. 59 at 5-12).

---

[4]     In certain circumstances, courts have rejected as premature as-applied challenges raised in a motion to dismiss the indictment which are dependent "on factual assertions about the circumstances surrounding the offense that are interwoven with evidence about whether [the defendant] committed the crime the Indictment has charged." *United States v. Poulin*, 588 F. Supp. 2d 58, 61 (D. Me. 2008) (dismissing without prejudice motion to dismiss indictment raising as-applied First Amendment challenge because motion "relies on facts not alleged in the Indictment and those facts constitutionally require resolution by a jury"); *see also United States v. Pope*, 613 F.3d 1255, 1261 (10th Cir. 2010) (rejecting pre-trial as-applied Second Amendment challenge to firearms charge, explaining that the defendant "contends the statute is unconstitutional only in light of the facts surrounding the commission of the alleged offense, the very facts a court may not consider before trial.") (internal quotation marks and citation omitted); *United States v. Miller*, No. 1:06 CR 364, 2007 WL 188277, at *3 (N.D. Ohio Jan. 22, 2007) (denying motion to dismiss because the as-applied challenge required resolution of evidentiary materials and therefore exceeded the scope of a Rule 12 motion); *United States v. Coronado*, 461 F. Supp. 2d 1209, 1217-18 (S.D. Cal. 2006) (denying as premature as-applied First Amendment challenge brought in a motion to dismiss the indictment). For reasons expressed below, the Court finds that Defendant's as-applied challenge raised in the pending Motion is capable of resolution by reference to the facts alleged in the Indictment.

Conversely, the Government maintains that § 922(g)(1) is constitutional as applied to a person in Defendant's circumstances under the historical analysis set forth in those cases. (*See* Docket No. 67 at 8-14). The applicable decisional law interpreting the Second Amendment compels the Court to conclude that the Government is correct.

A.  **Applicable Second Amendment[5] Law**

To start, in *District of Columbia v. Heller*, 554 U.S. 570, 630, 635 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742, 767-68 (2010), the Supreme Court recognized that the Second and Fourteenth Amendments protect an individual's right to possess a handgun in the home for the "core lawful purpose of self-defense." The Supreme Court stressed, however, that the right is not unlimited. *Heller*, 554 U.S. at 595. To illustrate, "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the [Second Amendment] right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. Accordingly, the Supreme Court instructed that "nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. Later, in *McDonald*, the Supreme Court reiterated that its holding in *Heller* did not cast doubt on such longstanding "prohibitions on the possession of firearms by felons," among other prohibitions. *McDonald*, 561 U.S. at 786.

In *Bruen*, the Supreme Court held that the Second and Fourteenth Amendments protect "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S. Ct. at 2122.

---

5       The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In so ruling, the Court articulated the following history-based framework for determining whether a firearm regulation is constitutional under the Second Amendment:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2126. As the Supreme Court explained, this framework "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. When assessing present day firearms regulations, the historical analysis that courts must undertake "will often involve reasoning by analogy." *Id.* at 2132. To that end, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 2133 (emphasis in original). In summary, although *Bruen* altered the analytical framework for addressing Second Amendment challenges, it did not displace *Heller* or *McDonald*, including *Heller's* admonition that nothing therein "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."[6]  *See Heller*, 554 U.S. at 626.

---

6    In concurring and dissenting opinions in *Bruen*, six Supreme Court Justices affirmed as much. *See Bruen*, 142 S. Ct. at 2157 (2022) (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. . . . Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago*, 561 U.S. 742 (2010), about restrictions that may be imposed on the possession or carrying of guns."); *see id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons. . . ."); *see id.* at 2189 (Breyer J., joined by Sotomayor J., and Kagan J., dissenting) (stating awareness that *Bruen's* holding has no impact on *Heller's* finding that banning felons from owning firearms is presumptively lawful).

Applying the *Bruen* framework, the Third Circuit Court of Appeals recently determined in a "narrow" decision that § 922(g)(1) was unconstitutional as applied to Bryan Range, who had previously been convicted of making a false statement to obtain food stamps in violation of Pennsylvania law. *Range*, 69 F.4ᵗʰ at 98, 106.  In undertaking the historical analysis, the Court of Appeals reiterated that, post-*Bruen*, it is first necessary to decide "whether the text of the Second Amendment applies to a person and his proposed conduct." *Id.* at 101 (citing *Bruen*, 142 S. Ct. at 2134-35).  If so, the Government bears the burden of proof to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* (quoting *Bruen*, 142 S. Ct. at 2127).

As to the "threshold question" whether Range was one of the "the people" who have Second Amendment rights, the Court of Appeals concluded that he was, thereby rejecting the notion that only "law-abiding, responsible citizens" are counted among "the people" protected by the Second Amendment. *Range*, 69 F.4ᵗʰ at 101, 103.  Next, the Court of Appeals determined that § 922(g)(1) regulated Second Amendment conduct because Range's request to possess a rifle to hunt and a shotgun to defend himself at home tracked the constitutional right as defined by *Heller*. *Id.* at 103 (citing *Heller*, 554 U.S. at 582).  The Court of Appeals then examined whether the Government met its burden to demonstrate that stripping firearms from one convicted of Range's prior felony is consistent with the Nation's historical tradition of firearm regulation, and concluded that it did not.  *Id.* at 103.  Because the Government failed to show that "our Republic has a longstanding history and tradition of depriving people ***like Range*** of their firearms, [the Court of Appeals held that] § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id.* at 106 (emphasis added).

Judge Ambro's concurrence in *Range* underscores that the decision is a "narrow one" as the majority expressly stated. *See Range*, 69 F.4th at 106, 109-113 (Ambro, J., concurring). Judge Ambro clarified that the Government's failure to carry its burden in that particular case "does not spell doom for § 922(g)(1)," and it remains "presumptively lawful"[7] "because it fits within our Nation's history and tradition of disarming those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society." *Id.* at 109, 110. Unlike those individuals, Range committed a "small-time offense," "[h]e did so with a pen to receive food stamps for his family," and there was nothing to suggest that he "pose[d] a threat to the orderly functioning of society." *Id.* at 112. As Judge Ambro pointed out, Range therefore "stands apart from most other individuals subject to § 922(g)(1) whom we fear much like early Americans feared loyalists or Reconstruction-era citizens feared armed tramps."[8] *Id.*

## B. Section 922(g)(1) is Constitutional As Applied to Defendant

Before undertaking the historical analysis required by *Bruen*, it bears repeating that the Court's review of Defendant's Motion is confined to the facts alleged in the Indictment, *see Bergrin*, 650 F.3d at 268, and the court "must accept as true the factual allegations set forth [therein]." *Huet*, 665 F.3d at 595. Consistent with this standard,[9] the Indictment alleges, and the Court accepts as true, the following: that on or about December 4, 2021, Defendant, knowing he

---

[7]      As to the presumptive lawfulness of § 922(g)(1), Judge Ambro reiterated that "three Justices in *Bruen*'s majority opinion reminded us that felon-in-possession laws remain presumptively lawful, and the three dissenting Justices echoed that view," thus "*a sound basis exists for § 922(g)(1)'s constitutional application in a substantial amount of cases.*" *Range*, 69 F.4th at 111 (Ambro, J., concurring) (emphasis added).

[8]      As discussed below, the Government cites numerous additional historical analogues from the founding and Reconstruction eras, which demonstrate that Defendant is not like Range. *See infra* at 11-13.

[9]      In the Court's estimation, this standard precludes consideration of information which is not alleged in the Indictment, including the Government's recitation of the facts and circumstances underlying Defendant's prior state drug trafficking, unlawful firearm possession and child endangerment convictions, as well as the fact that Defendant was sentenced to 18 months' probation for those crimes, which he was serving at the time of the offense conduct alleged in the Indictment. (*See* Docket No. 67 at 3).

previously had been convicted of certain crimes listed in the Indictment, each of which is punishable by a term of imprisonment exceeding one year, knowingly possessed, in and affecting interstate commerce, a Glock 27 .40 caliber firearm and certain .40 caliber and 9mm ammunition, in violation of 18 U.S.C. § 922(g)(1).  (Docket No. 15 at 1).  As alleged in the Indictment, Defendant's previous convictions include the following: one count of manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance; one count of possession of a firearm prohibited; and two counts of endangering the welfare of children, each on or about August 18, 2021, at Counts 1, 5, 6 and 7, respectively, of Docket No. CP-02-CR-0000242-2021, in the Court of Common Pleas of Allegheny County, Pennsylvania.  (*Id.*).

Moving on to application of *Bruen*'s historical framework to Defendant's case, the threshold question is whether Defendant is one of "the people" protected by the Second Amendment, despite having prior convictions of crimes punishable by a term of imprisonment exceeding one year.  *See Range*, 69 F.4th at 101.  Given *Range*'s holding that "the people" includes all Americans and not only "law-abiding, responsible citizens," *id.* at 101, 103, the Government agrees that Defendant is one of "the people" protected by the Second Amendment.  (*See* Docket No. 67 at 6).

The next question is whether the Second Amendment's plain text applies to Defendant's proposed conduct.  *Bruen*, 142 S. Ct. at 2126.  Defendant contends that it does because possessing a handgun, as the Indictment alleges he did, qualifies as "keeping and bearing" arms.  (Docket No. 59 at 6).  The Government disagrees that the Second Amendment applies to Defendant's conduct because he has neither argued, nor offered evidence, that he possessed the firearm in question for self-defense, which is the only Second Amendment-protected purpose that the Supreme Court has recognized.  (Docket No. 67 at 4).

In *Range*, the Third Circuit Court of Appeals characterized the question of "whether § 922(g)(1) regulates Second Amendment conduct" as "easy," and determined that it does. *Range*, 69 F.4th at 103. To be clear, the Court of Appeals explained that "*Range's* request – to possess a rifle to hunt and a shotgun to defend himself at home – tracks the constitutional right as defined by *Heller*." *Id.* (citing *Heller*, 554 U.S. at 582). As a result, the Court of Appeals concluded that "the Second Amendment's plain text covers [Range's] conduct," and "the Constitution presumptively protects that conduct." *Id.* (quoting *Bruen*, 142 S. Ct. at 2126). These statements indicate that the Court of Appeals considered the nature of Range's proposed conduct (not just the possession of a particular type of firearm as Defendant urges here) in answering that "easy" question, which is just what *Bruen* requires. *See Bruen*, 142 S. Ct. at 2134 ("We therefore turn to whether the plain text of the Second Amendment protects [an individual's] proposed course of conduct—carrying handguns publicly for self-defense.").

Here, the Court is unable to answer the question because, in order to consider the nature of Defendant's proposed conduct, the Court would be required to consider information external to the Indictment, which is beyond the Court's scope of review on the Motion to Dismiss.[10] (*See supra* at 3-4 and n.4). Nevertheless, in order to resolve Defendant's Motion, the Court need not

---

[10]     At this step of the analysis, another court observed, "[i]t is not clear that the *Bruen* or *Range* decisions would require an assertion of purpose in the criminal context." *United States v. Harper*, Crim. No. 1:21-CR-0236, 2023 WL 5672311, at *9 (M.D. Pa. Sept. 1, 2023), *appeal docketed*, No. 23-2604 (3d Cir. Sept. 6, 2023). This observation, as well as the fact that an assertion of purpose would be outside the allegations of an indictment for purposes of analyzing a motion to dismiss as discussed herein, underscore one challenge confronted by district courts in attempting to faithfully apply *Bruen* and *Range*. Perhaps this challenge exists, in part, because *Bruen* and *Range* were civil actions with different applicable procedural postures and standards of review as compared to the Motion to Dismiss presently before the Court in this criminal case.
        Nevertheless, as stated, this Court finds it unnecessary to answer the question of whether the Second Amendment's plain text covers Defendant's conduct, assumes only for the sake of argument that it does, and finds that the Government has sustained its burden to establish that § 922(g)(1) is constitutional as applied to Defendant in this case. Conversely, the *Harper* court determined that the defendant's firearm possession, as alleged in the indictment in that case, was conduct covered by the plain text of the Second Amendment, and ultimately held that the Government did not establish that § 922(g)(1) was constitutional as applied to the defendant there. *Harper*, 2023 WL 5672311at *9, *10-13. This Court is neither persuaded, nor bound, by *Harper* and notes that the case currently is pending appeal in the Third Circuit Court of Appeals at Case No. 23-2604.

address whether the Second Amendment covers Defendant's conduct.  This is because, even assuming for the sake of argument that it does, the Government has met its burden to show that § 922(g)(1) as applied to Defendant is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

To reiterate, "[h]istorical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.' " *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S. Ct. at 2133) (emphasis in original).  "To be compatible with the Second Amendment, regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue[,] [whereas] 'modern regulations that were unimaginable at the founding' need only be 'relevantly similar' to one." *Id.* (quoting *Bruen*, 142 S. Ct. at 2131, 2132).  Given that " '[i]llegal drug trafficking is a largely modern crime' with no direct historical analogue," *United States v. Reichenbach*, No. 4:22-CR-00057, 2023 WL 5916467, at *6 (M.D. Pa. Sept. 11, 2023) (quoting *United States v. Alaniz*, 69 F.4th 1124, 1129 (9th Cir. 2023)), the Court must determine whether the historical analogues identified by the Government and § 922(g)(1) are "relevantly similar." *Bruen*, 142 S. Ct. at 2132. *Bruen* identified two metrics that render historical and modern firearm regulations relevantly similar: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133.  As the Supreme Court explained, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Id.* (internal quotation marks and citations omitted).

In this case, the Government identifies as historical analogues for § 922(g)(1) a series of 17th, 18th and 19th century statutes which disarmed individuals who were deemed to be dangerous,

untrustworthy, or a threat to the orderly functioning of society. (*See* Docket No. 67 at 9-11).  The historical analogues identified by the Government share a common theme – disarming individuals who lawmakers deemed to be dangerous or disruptive to society and protecting the public from disorder and danger.  (*See id.*).  The Court finds that the Government's historical analogues which disarmed those who were deemed to "pose a threat to the orderly functioning of society," *Range*, 69 F.4th at 110, are proper historical analogues to § 922(g)(1), and specifically to § 922(g)(1)'s application to Defendant as a felon who previously was convicted of a drug trafficking offense.[11]

Turning to the "how and why" metrics to compare the relevant similarity of historical and modern firearms regulations, the Court assesses whether § 922(g)(1) and the historical regulations identified by the Government impose a comparable burden on Defendant's right of armed self-defense and whether that burden is comparably justified.  *Bruen*, 142 S. Ct. at 2133.  As to the "how," the Government's referenced historical analogues demonstrate that an individual's right to possess a firearm could be restricted or prohibited if he was deemed to be dangerous or disruptive to society or could not be trusted to obey the law.  With regard to the "why," the Government's historical analogues illustrate that the purpose of firearm restrictions or prohibitions was to ensure the orderly functioning of society and to protect the public from disruptions thereto.

The Court is satisfied that the "how and why" of § 922(g)(1) are relevantly similar to the historical analogues identified by the Government.  First, the "how" of § 922(g)(1) prohibits individuals, like Defendant, who have been convicted of a felony drug trafficking offense from possessing firearms because such individuals have demonstrated that they cannot be trusted to obey the law, and they pose a threat to the orderly functioning of society.  Section 922(g)(1)'s

---

[11]     Although the Third Circuit Court of Appeals found that Range "and his individual circumstances" were not sufficiently analogous to "groups [the founding-era governments] distrusted," *Range*, 69 F.4th at 105, the same cannot be said of Defendant, who is not like Range, given the nature of their underlying convictions – Range's making a false statement to obtain food stamps and Defendant's drug trafficking.

"why," like the referenced historical analogues, is to protect the public from violence and disorder, given that the danger drug trafficking poses to society is only exacerbated when drug dealers possess firearms. *See Smith v. United States*, 508 U.S. 223, 240 (1993) (observing that "drugs and guns are a dangerous combination"). For these reasons, the Court concludes that the historical analogues identified by the Government are relevantly similar to § 922(g)(1), and demonstrate that § 922(g)(1), as applied to an individual like Defendant who has been convicted of a felony drug trafficking offense, "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Accordingly, § 922(g)(1), as applied to Defendant, falls outside the protection of the Second Amendment. *See, e.g., United States v. Minter*, 3:22-CR-135, 2023 WL 6051265, at *9 (M.D. Pa. Sept. 15, 2023) (finding § 922(g)(1) constitutional as-applied to a defendant who previously was convicted of felony drug trafficking offense); *United States v. Blackshear*, Crim. No. 23-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (same); *Reichenbach*, 2023 WL 5916467, at *6 (same).

In summary, accepting as true the factual allegations set forth in the Indictment, the Court concludes that § 922(g)(1) is constitutional as applied to Defendant. Although history does not support disarming "people like Range," a person who previously made a false statement to obtain food stamps, *Range*, 69 F.4th at 106, the Government has sustained its burden to show that it does support disarming Defendant, who has a prior drug trafficking conviction, as alleged in the Indictment.[12] Convicted drug traffickers would "threaten the orderly functioning of society if they were armed." *Id.* at 112 (Ambro, J., concurring) (observing that "[m]ost felons have broken laws deemed to underpin society's orderly functioning, be their crimes violent or not"). Consequently,

---

[12]     Defendant's additional prior convictions alleged in the Indictment for unlawful firearm possession and child endangerment further demonstrate that he is not like Range, but rather like those individuals who historically were disarmed because they were deemed to "pose a threat to the orderly functioning of society." *Range*, 69 F.4th at 110 (Ambro, J., concurring).

barring the possession of firearms by individuals like Defendant is "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127.

## V.      CONCLUSION

The Court concludes that 18 U.S.C. § 922(g)(1) is constitutional as applied to Defendant, therefore his Motion to Dismiss Indictment, (Docket No. 59), is DENIED.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:  September 26, 2023

cc/ecf:  All counsel of record